# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, R.Q. WARD, K.M. MCDONALD**
Appellate Military Judges

### UNITED STATES OF AMERICA

v.

### NESTOR L. SUAZOLOPEZ
### MACHINIST'S MATE SECOND CLASS (E-5), U.S. NAVY

### NMCCA 201300463
### GENERAL COURT-MARTIAL

**Sentence Adjudged:** 21 June 2013.
**Military Judge:** CDR Colleen Glaser-Allen, JAGC, USN.
**Convening Authority:** Commander, Navy Region Mid-Atlantic, Norfolk, VA.
**Staff Judge Advocate's Recommendation:** CDR S.J. Gawronski, JAGC, USN.
**For Appellant:** LT Jessica Ford, JAGC, USN.
**For Appellee:** Maj Crista Kraics, USMC.

### 23 December 2014

---
### OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

An officer and enlisted member panel, sitting as a general court-martial, convicted the appellant, contrary to his pleas, of one specification of desertion, two specifications of violating a lawful general order for wrongfully engaging in an unduly familiar relationship with a U.S. Navy prospect, six specifications of making a false official statement, one specification of rape, one specification of aggravated sexual

Senior Judge Ward participated in the decision of this case prior to commencing terminal leave.

assault and one specification of wrongful sexual contact, in violation of Articles 85, 92, 107, and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 885, 892, 907, and 920.[1] The members sentenced the appellant to reduction to pay grade E-1, confinement for five years, forfeiture of $3045.60 pay per month for five years, and a bad-conduct discharge. The convening authority (CA) disapproved the adjudged forfeitures, approved the remaining sentence as adjudged and, except for the punitive discharge, ordered it executed.

The appellant raises six assignments of error (AOEs): (1) that the military judge plainly erred when she admitted documentary evidence that the appellant was a deserter; (2) that members below the rank of E-6 were impermissibly excluded in the nomination process; (3) that the Government failed to respond to a specific defense discovery request for material used by the CA in the nomination and selection of members; (4) that the staff judge advocate's recommendation (SJAR) is deficient because it incorrectly advised the CA that the trial defense counsel did not raise legal error; (5) that the appellant's convictions for rape and wrongful sexual contact are not legally or factually sufficient; and, (6) that the civilian defense counsel was ineffective.[2]

After careful consideration of the record of trial, the parties' pleadings, and the appellant's assignments of error, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

---

[1] Following a RULE FOR COURTS-MARTIAL 917, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) motion, the military judge found the appellant not guilty of one specification of forcible sodomy, Article 125, UCMJ. The members acquitted the appellant of one specification of violating a lawful general order, one specification of rape, three specifications of aggravated sexual assault, one specification of wrongful sexual contact, and one specification of forcible sodomy. Additionally, the military judge found the rape and aggravated sexual assault convictions to be an unreasonable multiplication of charges and therefore she conditionally dismissed the aggravated sexual assault specification (Specification 2 of CH IV) "[to] ripen into full dismissal when direct review becomes final pursuant to Article 71, UCMJ." Record at 1261.

[2] AOEs V and VI are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We have considered these AOEs and find no error. *United States v. Clifton*, 35 M.J. 79, 81 (C.M.A. 1992).

**Background**

The offenses in this case stem from the appellant's interactions with two prospective recruit applicants during his tour as a Navy recruiter. Logistics Specialist Third Class (LS3) BH testified that in June 2010, during a visit to the recruiting office where the appellant worked, the appellant took her into a back room to perform a body composition measurement.[3] LS3 BH testified that during the course of performing the measurements the appellant pressured her for sex, but that she refused. LS3 BH stated the appellant then forced her onto a couch and engaged in sexual intercourse with her against her will. The Government introduced evidence that multiple semen stains found on that couch contained the appellant's DNA.

Another recruit applicant, Ms. SS, testified that during the course of her application process, the appellant initiated inappropriate physical contact and sent her non-professional text messages. She further testified that his advances culminated in an incident where he ran his hand up her inner thigh during a visit to his recruiting office.

The day prior to the Article 32, UCMJ, Investigation in this case, the appellant fled the United States for his native Honduras. Further evidence introduced at trial indicated the appellant held dual Honduran and United States citizenship. Approximately eleven months later, the appellant returned to the United States after surrendering himself to the United States Embassy in Honduras. These facts gave rise to his conviction for desertion.

**Admission of NAVPERS Form 1070/606**

Prior to seating the panel, the trial counsel offered Prosecution Exhibit 1 into evidence. The third page of PE 1 was NAVPERS Form 1070/606 dated 6 March 2013 which documented the appellant's unauthorized absence. Without objection from the trial defense counsel, the military judge admitted PE 1 into evidence. The "Amplifying Remarks" section of PE1 contained the following:

17APR2012: Member reported as deserter this date. Member deliberately fled the country prior to his previously scheduled Art. 32 hearing and has exhibited

---

[3] COMNAVCRUITCOM INSTRUCTION 5370.1D (27 Jan 2010) requires that same-sex individuals perform all body-fat measurements on prospective recruits.

manifest and (sic) intent to desert.  06MAR2013:  MBR
SURR to U.S. Embassy Honduras, 01MAR2013.  RTN to
MILCON 1700, 02MAR2013.  ROB TPU NORVA 0020,
03MAR2013.  Retained ONBD for DISCIPACT/Disposition.

In his first AOE, the appellant avers that the military
judge plainly erred in admitting the above language into
evidence because it was irrelevant, prejudicial, and offered a
legal conclusion as to the appellant's guilt to desertion.
Applying a plain error analysis we disagree.

A military judge's decision to admit or exclude evidence is
reviewed under an abuse of discretion standard.  *United States
v. McDonald*, 59 M.J. 426, 430 (C.A.A.F. 2004).  However, when an
appellant objects to the admission of evidence for the first
time on appeal, we review for plain error.  *United States v.
Powell,* 49 M.J. 460, 465 (C.A.A.F. 1998).  To constitute "plain
error," an error must in fact exist, that error must be plain or
obvious, and the error must materially prejudice a substantial
right of the appellant.  *United States v. Lepage*, 59 M.J. 659,
660 (N.M.Ct.Crim.App. 2003).

The NAVPERS Form 1070/606 was clearly relevant and material
to establish the dates and circumstances of the appellant's
absence.  PE 11 stipulated to the appellant's airline flight
from New York, NY to Honduras (via Atlanta) on 17 Apr 2012 as
well as the appellant's 1 Mar 2013 surrender to the U.S. Embassy
in Tegucigalpa, Honduras and his return to U.S. military control
on 2 Mar 2013 in Miami, FL.  Thus, the appellant's intent was
the sole element at issue on the desertion charge.[4]  Although the
military judge may have erred in admitting the language in PE 1
referencing desertion and/or the appellant's intent, we do not
find such error to be plain and obvious, nor do we find any
error materially prejudiced a substantial right of the
appellant.

While the "Amplifying Remarks" referenced desertion, we
note that the document itself is entitled "Record of
Unauthorized Absence" and the terms "Unauthorized Absence" or
"UA" occur six additional times throughout the document.  On its
face the document is clearly an administrative form used to
record the appellant's absence from his unit.  Moreover, the
trial counsel did not make a single reference to the NAVPERS
form or the Amplifying Remarks language in her opening
statement, closing arguments, or otherwise throughout the trial.

---

[4] Appellant's Brief of 27 Feb 2014 at 8.

The facts surrounding the appellant's absence were fully before the members and the military judge properly instructed them on the elements for desertion and unauthorized absence as well as the difference between the two offenses. The members acknowledged and understood the military judge's instruction in this regard.[5] Under these circumstances, we disagree with the appellant's assertion that admission of the Amplifying Remarks language constituted plain error.

## Panel Member Selection

In his second AOE the appellant avers that the CA impermissibly and systematically excluded members below the pay grade E-6 from the nomination process. On 22 March 2013, Commander, Naval Region Mid-Atlantic issued an instruction to subordinate commands establishing the procedure for nominations of prospective court-martial members. The instruction directed each subordinate command to provide a certain number of nominees in the ranks of E-6 through O-6. The instruction did not call for nominees below E-6, regardless of the accused's pay grade.

We review the proper selection of a court-martial panel *de novo*. *United States v. Kirkland* 53 M.J. 22, 24 (C.A.A.F. 2000). We look at three primary factors to determine whether an impermissible member selection has taken place: (1) Improper motive in packing a member pool; (2) Systematic exclusion of potential members based on rank or other impermissible variable; and, (3) Good faith attempts to be inclusive and open the court-martial process to the entirety of the military community. *United States v. Dowty*, 60 M.J. 163, 171 (C.A.A.F. 2004). If either of the first two criteria is present, the process is impermissible. *Id.* These criteria are not only considered in the actual panel selection process, but also in the process of presenting nominations to the CA. *United States v. Roland*, 50 M.J. 66, 69 (C.A.A.F. 1999).

In a case of systematic exclusion of members by rank, it is the responsibility of the defense to establish the improper exclusion. *Kirkland*, 53 M.J. at 24. Once improper exclusion has been established, the burden is placed on the Government "to demonstrate that the error did not 'materially prejudice the substantial rights of the accused.'" *Dowty*, 60 M.J. at 173 (quoting Art. 59(a), UCMJ).

---

[5] Record at 1058.

Assuming that the appellant established a systematic exclusion of members based on the quotas set forth in the instruction, we assess for material prejudice to the appellant. In reviewing this case we find: (1) no evidence that the instruction was issued with an improper motive; (2) no evidence that the CA had an improper motive when detailing the members assigned to the appellant's court-martial; (3) the CA was a person authorized to convene a general court-martial; (4) the CA was properly advised of his Article 25 responsibilities, and knew that he could pick any member within his Region's claimancy, not just those who had been nominated; (5) the court members were personally chosen by the CA from a pool of eligible candidates; (6) the CA was specifically aware that he could select members in the appellant's paygrade of E-5, but based in part on the practical concern of ensuring all members were senior to the appellant, he chose to select members E-6 and above[6]; and, (7) all court members met the criteria in Article 25, UCMJ. Under these circumstances, we are convinced that the appellant's case was heard by a fair and impartial panel, and that any error in this case was harmless.

**Discovery of Member Selection Matters**

In the course of the discovery process, the civilian defense counsel requested all information which the CA and his advisors used in the nomination of prospective members and in the final selection of the court members for the court-martial orders issued in this case. The instruction discussed above was not provided to the defense, despite this request, and the appellant asserts this failure constitutes prejudicial error.[7]

Through Article 46, UCMJ, a military accused is granted the "equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." Moreover, upon request, an appellant is permitted to inspect "papers . . . within the possession, custody, or control of military authorities . . . which are material to the preparation of the defense[.]" RULE FOR COURTS-MARTIAL 701(a)(2)(A), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).

When determining whether there has been a discovery violation, this court must determine whether the evidence at

---

[6] Government Motion to Attach of 13 Jun 2014, Affidavit of Rear Admiral T.G. Alexander, USN (Ret).

[7] We note that the members questionnaires provided to the defense referenced the instruction. Appellate Exhibit LIV.

issue was subject to discovery and, if so, determine what effect the failure to disclose had on the appellant's trial. *United States v. Roberts*, 59 M.J. 323, 325 (C.A.A.F. 2004). To be eligible for defense discovery a document must be in the Government's possession or control and material to the preparation of the defense. R.C.M. 701(a)(2)(A). When there has been a discovery violation, we test that violation for prejudice. In cases where the appellant either did not make a discovery request or made only a general request for discovery, the Government has the burden of proving that the error was harmless. However, in those cases where the appellant made a specific request for the undisclosed information, the Government must show that the error was harmless beyond a reasonable doubt. *Roberts*, 59 M.J. at 327.

Although the appellant did not ask for the instruction in question by name, his request was specific enough to trigger the heightened requirement of proof beyond a reasonable doubt. However, even applying that higher standard, we find against the appellant. For the same reasons articulated above, we find that despite the discovery violation, the appellant was tried by a fair and impartial panel, and that the discovery error was harmless beyond a reasonable doubt.

**Failure to Comment on Legal Error in SJAR**

In AOE IV, the appellant asserts that it was prejudicial error for the staff judge advocate (SJA) to not address the defense's clemency submission that challenged the findings of guilty to desertion, rape and wrongful sexual contact in the SJAR. As a remedy, the appellant requests that this case be remanded to the CA for new post-trial processing.

R.C.M. 1106(d)(4) "requires that 'the staff judge advocate . . . state' in his recommendation 'whether, in' his 'opinion, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted under R.C.M. 1105 or when otherwise deemed appropriate by the staff judge advocate.'" *United States v. Hill*, 27 M.J. 293, 295 (C.M.A. 1988). An analysis or rationale for an SJA's statements concerning legal error is not required and a response may merely consist of either a statement of agreement or disagreement with any legal error raised by the appellant. R.C.M. 1106(d)(4). When the defense raises an allegation of legal error in a clemency submission, the SJA must advise the CA whether corrective action is required. R.C.M. 1106(d)(4); *see also Hill*, 27 M.J. at 296.

In most instances, failure of the SJA to prepare a recommendation with the contents required by R.C.M. 1106(d)(4) will be prejudicial and will require remand of the record for preparation of a suitable recommendation for the CA. *Hill*, 27 M.J. at 296. However, if we are convinced that under the particular circumstances, a properly prepared recommendation would have no effect on the CA – the burden in this regard being on the Government – remand to the CA is unnecessary. *Id.* Accordingly, if a defense allegation of legal error is presented after trial and clearly has no merit, the accused is not entitled to relief merely because of failure by the SJA to state specifically in the SJAR that the assigned error lacked merit. *Id.*

In this case we note that the SJA prepared an addendum following receipt of the civilian defense counsel's post trial submission and advised the CA that he was required to consider the submitted matters in determining whether to approve or disapprove any of the findings of guilty and his action on the sentence.[8] The SJA further recommended that the CA approve the sentence as adjudged.

We find that the evidence was legally and factually sufficient to support the findings of guilty beyond a reasonable doubt to the desertion, rape, and wrongful sexual contact specifications. Thus, we find this issue without merit and further find no prejudice to the appellant by the SJA's failure to comment on the allegations of error. Further advice from the SJA would not have had an effect on the CA in this case. Because the appellant was not prejudiced, returning this court-martial to the CA is not necessary.

## Conclusion

The approved findings as conditionally modified and the sentence as approved by the CA are affirmed. The conditional dismissal of Specification 2 under Charge IV shall ripen to a full dismissal when direct review becomes final pursuant to

---

[8] The SJA specifically stated in the addendum that the defense has not raised any allegations of legal error.

Article 71(c), UCMJ, provided that the rape conviction is not set aside during any subsequent appellate review. *See United States v. Britton,* 47 M.J. 195, 204 (C.A.A.F. 1997) (Effron, J., concurring).

For the Court

R.H. TROIDL
Clerk of Court